IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

DAVID A. WINSLOW                                                                                      PLAINTIFF

VS.                                                                              CIVIL ACTION NO. 1:15cv390-FKB

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION                                                                     DEFENDANT

## ORDER

### I. Introduction

David A. Winslow filed for supplemental security income on April 15, 2014. After his application was denied both initially and upon reconsideration, he requested and was granted a hearing before an ALJ. The hearing was held on June 23, 2015, and on August 5, 2015, the ALJ issued a decision finding that Winslow is not disabled. The appeals council denied review on September 25, 2015. Winslow now brings this appeal pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). Presently before the Court is his motion for summary judgment [12]. Having considered the memoranda of the parties and the administrative record, the Court concludes that the motion should granted, the decision of the Commissioner reversed, and this matter remanded to the Commissioner.

### II. Facts and Evidence before the Commissioner

Winslow was born on August 21, 1971, and was 43 years of age at the time of the decision of the ALJ. He completed the eleventh grade in special education and has past relevant work experience as a sheet metal worker. Winslow alleges disability due

to obesity, diabetes, atrial fibrillation, chronic kidney disease, hypertension, low back pain, knee pain, leg pain, sleep apnea, and depression.

The record indicates that Winslow suffers from several chronic conditions. He has a history of atrial fibrillation and hypertension, for which he takes Diltiazem, Digoxin, Xarelto, Lopressor, and Lisinopril. He also is diabetic. Winslow suffers from sleep apnea and uses a CPAP machine. He is obese; at the time of his application, his weight was approximately 430 pounds, *see* R. 306, [9] at 316, and he weighed 374 pounds at the time of the hearing, R. 34, [9] at 39. He has a history of ulcers and open wounds on his lower extremities: In February of 2013, he was hospitalized and treated for lower extremity cellulitis, and records in April and May of 2014, September of 2014, October of 2014, and February of 2015 indicate the presence of wounds. R. 373-74, [9] at 384-85; R. 393, [9] at 404; R. 407, [9] at 418; R. 418, [9] at 430. Winslow has also experienced intermittent gastrointestinal problems. Following complaints of rectal bleeding and abdominal pain, he underwent a colonoscopy and EGD with biopsy in May of 2014. R. 300-302, [9] at 310-12. Results showed minimal gastritis. *Id.* In May of 2014 he underwent laparoscopic gall bladder surgery without complications. R. 314, [9] at 324. A note from a September 12, 2014 office visit indicates that he was continuing to experience abdominal pain and bleeding. R. 399, [9] at 410.

Winslow has a history of kidney disease and problems with fluid retention. On September 12, 2014, his treating physician, Dr. Rowe Crowder, noted that Winslow was in acute renal failure and advised him to drink more water. R. 399-400, [9] at 410-11. Four days later, Winslow presented to the emergency room complaining of shortness of

breath and edema.  R. 451, [9] at 463.  He was treated with Lasix IV.  *Id.*  Impression included bilateral lower extremity edema, acute renal failure secondary to dehydration, and hyponatremia.  *Id.*  In a progress note dated October 7, 2014, Dr. Crowder noted that Winslow was continuing to experience problems with decreased urine output and that he had a mass on his left kidney.  R. 407, [9] at 418.  Winslow went to the emergency room again in January of 2015, where his diagnoses included chronic kidney disease, decreased urination, hematuria, left flank pain, uremia, and weakness.  R. 434, [9] at 446.  In February of 2015, he underwent surgery for renal cell carcinoma of the left kidney.  R. 487, [9] at 499.  Discharge diagnoses were acute renal failure; renal cell carcinoma; chronic kidney disease, stage three (moderate); hypertension; and a leg ulcer.  R. 418, [9] at 430.  Winslow was evaluated by a nephrologist, Dr. Erica Hopkins, in June of 2015.  R. 507-510, [9] at 519-22.  Dr. Hopkins likewise diagnosed him with chronic kidney disease, stage three (moderate).  R. 509, [9] at 521.

Winslow has complained of and undergone evaluation for pain in several joints.  X-rays performed on June 24, 2014, showed mild degenerative changes of the lumbar spine and mild tricompartmental osteoarthritis in the right knee.  R. 343-44, [9] at 353-54.  In July of 2015, he was evaluated by Dr. Elliot Nipper, an orthopedist, who diagnosed him with bilateral knee varus degeneration.  R. 517, [9] at 529.  Dr. Nipper noted that the only treatment available was physical therapy and bracing, as any other intervention was contraindicated by Winslow's other medical conditions.  *Id.*[1]

---

[1] It does not appear that Dr. Nipper's records were submitted to the ALJ before her decision.  They were, however, submitted to the Appeals Council.

3

In September of 2014, Winslow began treatment at Gulf Coast Mental Health Center for complaints of depression and feelings of helplessness and hopelessness. Initial assessment by a therapist was major depressive disorder, severe, single episode, and a global assessment of functioning of 50.  R. 382, [9] at 393  He was seen monthly thereafter and was treated with Effexor, Seroquel, and Restoril.  The most recent case notes, from May of 2015, indicate that he was experiencing mood swings and problems sleeping.  R. 499, [9] at 511.

Winslow has undergone two consultative examinations.  Dr. Michael Zakaras performed a comprehensive mental evaluation of Winslow on June 9, 2014.  At the exam, Winslow reported that he experienced sadness, daily crying spells, and problems sleeping.  R. 332, [9] at 342.  His daily activities were limited to watching television, sometimes walking a short distance after supper, and trying to attend church once a week.  R. 331-32, [9] at 341-42.  He indicated that he had suicidal ideations at least once a week and that he had made one suicide attempt approximately six months earlier.  R. 332, [9] at 342.  Winslow's interpretation of proverbs was poor; otherwise, his responses to questions in the the mental status portion of the exam were unremarkable.  *Id*.  Dr. Zakaras opined that the most appropriate diagnosis would appear to be depressive disorder NOS. R. 333, [9] at 343.

Dr. Syed Sadiq performed a consultative physical examination of Winslow on June 24, 2014.  Dr. Sadiq noted that Winslow was morbidly obese (418 pounds), was unable to take his shoes off, experienced shortness of breath on walking a few steps, and used crutches.  R. 336, [9] at 346.  His assessment of Winslow's residual functional

4

capacity was that Winslow could carry less than 10 pounds occasionally, that he could stand and walk less than two hours in an eight-hour work day with no limitations on sitting, that he could climb, balance, stoop, kneel, crouch and/or crawl occasionally as tolerated, and that he had no manipulative restrictions. R. 339, [9] at 349. Dr. Sadiq also stated that the crutches used by Winslow were objectively necessary. R. 338, [9] at 348.

At the hearing, Winslow testified that his daily activities consist primarily of sitting in a recliner and watching television. R. 41, [9] at 46. He testified that he tries to get up and walk a little, but he can walk only about five feet without crutches before his knees give out. R. 40, [9] at 45. He stated that he has to make himself get up and go to the bathroom, because otherwise he can go all day without urinating. R. 41, [9] at 46. Winslow stated that his most serious problem, in terms of his inability to work, is joint pain. R. 32, [9] at 37. He explained that previously he had taken Naproxen for his joint pain but that he can no longer take it because of his kidney disease. *Id.* Winslow's wife testified that Winslow "can't do anything" and that she has to help him in and out of the bed and onto and off of a toilet if it does not have handicap rails. R. 42, [9] at 47. She stated that he is unable to do any chores around the house because of his inability to walk. *Id.* Ms. Winslow testified that her husband was depressed most of the time. R. 43, [9] at 48. She also corroborated his testimony that he can go all day without urinating, and she stated that the swelling in his feet prevents him from being able to wear regular shoes. R. 42-43, [9] at 47-48.

### III. The Decision of the ALJ

In her decision, the ALJ worked through the familiar sequential evaluation process for determining disability.[2] She found that Winslow has the severe impairments of obesity, low back pain, diabetes, atrial fibrillation, and degenerative changes of the foot. R. 13, [9] at 18. She found that Winslow's hypertension, history of abdominal pain, sleep apnea on CPAP, history of gastrointestinal bleed, kidney cancer status-post nephrectomy, and depression were not severe impairments. R. 13-15, [9] at 18-20. At step three, the ALJ determined that Winslow does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 15-16, [9] at 20-21. The ALJ found that

---

[2] In evaluating a disability claim, the ALJ is to engage in a five-step sequential process, making the following determinations:

    (1)    whether the claimant is presently engaging in substantial gainful activity (if so, a finding of "not disabled" is made);

    (2)    whether the claimant has a severe impairment (if not, a finding of "not disabled" is made);

    (3)    whether the impairment is listed, or equivalent to an impairment listed, in 20 C.F.R. Part 404, Subpart P, Appendix 1 (if so, then the claimant is found to be disabled);

    (4)    whether the impairment prevents the claimant from doing past relevant work (if not, the claimant is found to be not disabled); and

    (5)    whether the impairment prevents the claimant from performing any other substantial gainful activity (if so, the claimant is found to be disabled).

*See* 20 C.F.R. § 416.920. The analysis ends at the point at which a finding of disability or non-disability is required. The burden to prove disability rests upon the claimant throughout the first four steps; if the claimant is successful in sustaining his burden through step four, the burden then shifts to the Commissioner at step five. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

Winslow has the residual functional capacity (RFC) to perform the full range of sedentary work as defined by 20 C.F.R. § 416.967(a). R. 16-21, [9] at 21-26. The ALJ considered Winslow's subjective allegations of limitations but found that they were not fully credible in light of the lack of objective and clinical evidence. R. 17-20, [9] at 22-26. At step four, the ALJ found that Winslow is not capable of performing his past relevant work. R. 21, [9] at 26. At step five, the ALJ found, based upon application of Rule 201.25 of the Medical-Vocational Guidelines, 20 C.F.R. Part 4040, Subpart P, Appendix 2, that Winslow is not disabled. R. 22, [9] at 27.

**Analysis**

In reviewing the Commissioner's decision, this court is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).[3] In his memorandum, Winslow makes the following arguments: (1) That the ALJ erred in assessing the severity of Winslow's impairments at step two; (2) that the ALJ's RFC determination is not supported by substantial evidence; (3) that the ALJ's credibility determination is not supported by substantial evidence; and (4) that the ALJ's step five determination is not supported by substantial evidence. The Court concludes that at

---

[3] "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance. . . ." *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1302 (5th Cir. 1987)). If the Commissioner's decision is supported by substantial evidence, it is conclusive and must be affirmed, *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)), even if the court finds that the preponderance of the evidence is against the Commissioner's decision, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994).

least one portion of this first argument is determinative and requires remand; thus, the remaining arguments are not addressed.

     As Winslow points out in his memorandum, the ALJ never identified Winslow's knee pain as an impairment and never made any findings concerning it.  Indeed, other than in a passage recounting Winslow's testimony, Winslow's knee condition is mentioned nowhere in the opinion.   It is well established in this circuit that "the ALJ must analyze both the 'disabling effect of each of the claimant's ailments' and the 'combined effect of all of these impairments.'"  *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) (quoting *Fraga v. Bowen*, 810 F.2d 1296, 1305 (5th Cir. 1987)).  While the ALJ in this case may have had Winslow's knee condition in mind when she made references to joint pain, or when she determined that he did not need crutches for ambulation, there is no way to determine whether this is the case.  Because it is not clear how or even whether the ALJ evaluated Winslow's knee condition, meaningful judicial review of the ALJ's decision on this point is not possible.  Furthermore, the error is not harmless:  X-rays showed osteoarthritis in Plaintiff's right knee, and as the ALJ herself states in the opinion, "[s]omeone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone."  R. 16, [9] at 21.  It is clear from Winslow's testimony that he believes his knee pain to be one of the most significant reasons for his alleged inability to work.  Therefore, remand is necessary for the ALJ to properly evaluate Winslow's allegations of knee pain.

Another of Winslow's arguments regarding the ALJ's findings at step two bears mention and confirms the Court's conclusion that this matter should be remanded. Winslow attacks as lacking in substantial evidence the ALJ's finding that Winslow's chronic kidney disease is not a severe impairment. In this circuit, the standard for severity is a low one: An impairment can be considered non-severe "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). The medical record in this case indicates that Winslow has experienced ongoing problems with fluid retention and fluid overload as well as non-healing wounds and ulcers of the lower extremities– conditions likely connected with his renal problems.[4] While the ALJ's finding on this issue might not, in isolation, warrant reversal, when it is considered along with her failure to specifically address Winslow's knee problems, it raises further doubt as to whether she evaluated the effect of all of Winslow's impairments, severe and non-severe, both separately and in combination with one another. Upon remand, the ALJ should reevaluate all of Winslow's impairments and their effect, both separately and in combination with one another, on his ability to work.

---

[4] Kidney damage can result in the leakage of protein into the urine. The reduction of the amount of protein in the blood causes fluid from the bloodstream to leak out into the tissues. https://www.kidney.org/kidneydisease/aboutckd. Fluid volume overload frequently occurs in patients with chronic kidney disease. *Volume Overload and Adverse Outcomes in Chronic Kidney Disease*, J Am Heart Assoc. 2015 May 5;4(5),https://www.ncbi.nlm.nih.gov/pubmed/25944876. Severe lower extremity edema can interfere with blood flow and result in non-healing lesions and ulcers. http://www.webmd.com/heart-disease/heart-failure/edema-overview#2.

**Conclusion**

For these reasons, Winslow's motion is granted, the decision of the Commissioner is reversed. and this matter is remanded to the Commissioner for reevaluation of all the evidence in accordance with this opinion. A separate judgment will be entered.

So ordered, this the 8th day of February, 2017.

<u>s/ F. Keith Ball</u>
United States Magistrate Judge
